# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAROLYNE G. JOHNSON, <br><br> Plaintiff, <br><br> v. <br><br> STEVEN MNUCHIN, SECRETARY OF THE TREASURY <br><br> Defendant. | Civil Action No. 17-cv-01541 (TSC) |

## MEMORANDUM OPINION

Plaintiff Carolyne G. Johnson, a former District of Columbia Public School ("DCPS") employee, brings this action against Defendant Secretary of the U.S. Department of Treasury seeking reversal of the Office of the District of Columbia Pensions' ("ODCP") decision regarding her retirement benefits. (ECF No. 1 ("Compl."))

Defendant moves, pursuant to Federal Rule of Civil Procedure 56, for summary judgment. (ECF No. 8 ("Def.'s Mot. for Summ. J.")) For the reasons set forth below, Defendant's motion will be GRANTED.

## I. BACKGROUND

### A. Statutory Framework

DCPS employees are eligible to participate in the District of Columbia Teachers' Retirement Plan (the "Plan"), for which the Federal Government and the District Government share responsibility. *See* Balanced Budget Act of 1997, Pub. L. No. 105-33, 111 Stat. 251. The Federal Government, through the Treasury Department, is responsible for funding Plan benefits

based on teacher service performed on or before June 30, 1997. *See* D.C. Code § 1-701; *see also id.* at §§ 1-801.01–1-801.02 (defining retirement program as any teacher retirement program, as described in § 1-702(7), in effect on the day before June 30, 1997). The District Government administers the program through an independent agency, the District of Columbia Retirement Board ("DCRB"). *See* D.C. Code §§ 1-711, 1-809.01.

If a Plan participant disagrees with a benefit determination, she may request reconsideration from the DCRB. *See* 31 C.F.R. § 29.404 (b)–(d). If she disagrees with the reconsideration determination, she may file an appeal with ODCP. *See* 31 C.F.R. § 29.405. ODCP's decision is considered a final agency action, from which a party may seek judicial review. *See* 31 C.F.R. §§ 29.405–29.406.

### B. Plaintiff's Employment and Plan Contribution History[1]

Plaintiff began her career with DCPS as a temporary employee on September 1, 1961. (*See* A.R. 498.)[2] She was hired as a permanent DCPS employee on October 1, 1963. (*Id.*) It is undisputed that Plaintiff contributed to the Plan from 1963 to her resignation on July 29, 1970. (*Id.*) The parties disagree, however, on whether Plaintiff was issued a refund for the same period on October 6, 1970. (*Compare* A.R. 498 and 565 *with* ECF No. 10 ("Pl.'s Opp'n") at 5 ¶ F.)

Plaintiff resumed employment with DCPS on September 22, 1971 and was an off-and-on employee until her final period of employment began on September 1, 1979. (*See* A.R. 498.)

---

[1] The parties' submissions contain a detailed account of Plaintiff's employment history with DCPS. Because the dispute is confined to a certain time period (1963 to 1970), the court recounts Plaintiff's work and contribution history only when relevant.

[2] Citations to "A.R." refer to the Administrative Record filed in this case on May 1, 2018. (*See* ECF No. 13.)

On October 1, 1990, Plaintiff sent a letter to the District of Columbia Retirement Office, in which she mentioned that she had previously "retired" but returned to the DCPS and stated: "I am requesting that you please compute the amount of money I need to **pay back** into my retirement to bring it into compliance." (A.R. 655 (emphasis added).)

On January 29, 1991, the D.C. Retirement Section responded to Plaintiff, informing her that she could purchase 9 years, 4 months, and 29 days of creditable service for a lump sum of $9,743.81. (A.R. 534.) The letter also included the following:

| BREAKDOWN: | | Due 06/30/91 |
|---|---|---|
| 00 yrs., 09 mos., 07 days | = 08/30/60 – 06/06/61 Outside Teaching | = $1,192.37 |
| 02 yrs., 01 mos., 00 days | = 09/01/61 – 09/30/63 Temporary [Teaching] | = $3,065.82 |
| 06 yrs., 06 mos., 22 days | = 10/01/63 – 07/28/70 Redeposit Time | = $5,485.62 |

(*Id.*)

On September 6, 1991, Plaintiff wrote the D.C. Retirement Section, requesting computation of a five-year payment plan to purchase 9 years, 4 months, and 25 days of creditable service. (A.R. 533.) After stating the amount of creditable service, she wrote "See attached letter," and included the D.C. Retirement Section's January 29, 1991 letter, which stated that the creditable service included 6 years, 6 months, and 22 days of redeposit time from the period of October 1, 1963 to July 28, 1970. (A.R. 533–34.)

On October 28, 1991, the D.C. Retirement Section responded to Plaintiff, informing her that she could purchase 9 years, 4 months, and 29 days of creditable service on a 48-month installment plan, under which $109.90 would be deducted per pay period. (A.R. 535.)

3

On October 30, 1991, Plaintiff replied, "selecting the installment plan to purchase 9 years, 4 months, and 29 days of creditable service," and authorizing the payroll deductions. (A.R. 569.)

Plaintiff retired on August 31, 1997, and her retirement annuity commenced the following day. (*See* A.R. 497–98, 672.)

### C. Plaintiff's Administrative Challenges

ODCP sent Plaintiff a letter on January 23, 2015, explaining that there had been two calculation errors in her annuity, resulting in Plaintiff owing $23,151.00.[3] Plaintiff did not dispute those errors but instead claimed that she had identified a third error. (A.R. 666, 676–680.) On January 30, 2015, she sent a request for reconsideration to ODCP alleging that the January 23, 2015 benefit adjustment letter incorrectly calculated her period of teacher service as 25 years, 1 month, and 14 days. (A.R. 665–66.) In support, Plaintiff provided a computation worksheet dated May 19, 1996, calculating her period of teacher service as 41 years, 4 months, and 3 days. (A.R. 667.) Plaintiff noted that the discrepancy was due in part to ODCP's failure to include the "purchased time" (9 years, 4 months, and 25 days) that was mentioned on the computation worksheet. (A.R. 666.) She also attached the September 6, 1991 letter to the D.C. Retirement Section requesting computation of a five-year payment plan to purchase 9 years, 4 months, and 25 days of creditable service. (A.R. 666, 668.)

On May 8, 2015, ODCP denied Plaintiff's reconsideration request. (A.R. 599–601.) Upon reviewing Plaintiff's computation worksheet, ODCP found that it contained two errors. First, it "double-counted the period of October 1, 1963 – July 28, 1970" because it counted not only

---

[3] ODCP waived collection of the $23,151.00. (*See* A.R. 328, 332–36, 677–78.)

Plaintiff's purchased redeposit time, but also her initial service. (A.R. 600.) Second, it did not reflect Plaintiff's leave without pay periods during this same time. (*Id.*)

On June 12, 2015, Plaintiff administratively appealed ODCP's determination, noting that although ODCP had provided her with documentation indicating that she received a refund, she had neither requested nor received a refund. (A.R. 588.) Plaintiff asked for substantiation that she received the refund and a recalculation of her creditable years under the Plan. (*Id.*)

On March 23, 2016, ODCP denied Plaintiff's appeal. (A.R. 495–501.) In addressing Plaintiff's sole challenge on appeal—that she never received the refund—ODCP listed three pieces of information from her file that supported its determination. (A.R. 499–500.) First, there was a notation on her Individual Retirement Record (Form FA-103) that voucher #047899, dated October 6, 1970, was "prepared and paid on audit." (A.R. 500.) According to ODCP, "such vouchers are prepared and paid only when an annuitant receives a refund of retirement contributions." (*Id.*) Second, Form FA-103 listed Plaintiff's accumulated contribution amount as zero in 1971. (*Id.*) ODCP reasoned that the only way Plaintiff's retirement contributions could have been $0 in 1971 is if Plaintiff had received a refund of the contributions made prior to 1971. (*Id.*) Third, the January 29, 1991 D.C. Retirement Section letter informed Plaintiff that she could purchase 9 years, 4 months, and 29 days of creditable service and stated that this purchase would include 6 years, 6 months, and 22 days of "redeposit time" for the period of October 1, 1963 to July 28, 1970. (*Id.*) ODCP determined that the fact that Plaintiff "repurchased this service as 'redeposit time' confirms that [she] previously received a refund of this service." (*Id.*)

Plaintiff then filed this action challenging Defendant's calculation of the total years she served as a DCPS employee.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002). In determining whether a genuine dispute of material fact exists, the court views all facts in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). The movant must rely on material in the record to demonstrate the absence of any genuinely disputed issues of material fact. Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 332. In response, the nonmoving party must provide her own evidence beyond the pleadings to demonstrate specific facts showing that there is a genuine factual issue for trial. *Celotex Corp.*, 477 U.S. at 324. "Where the nonmoving party is proceeding *pro se*, courts in this jurisdiction will construe the non-moving party's filings liberally." *Cunningham v. U.S. Dep't of Justice*, 40 F. Supp. 3d 71, 82 (D.D.C. 2014), *aff'd*, No. 14-5112, 2014 WL 5838164 (D.C. Cir. Oct. 21, 2014). "However, a *pro se* litigant still has the burden of establishing more than '[t]he mere existence of a scintilla of evidence' in support of [her] position." *Id.* (alteration in original) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

In Administrative Procedure Act ("APA") cases, summary judgment is "the mechanism for deciding whether as a matter of law the agency action is supported by the administrative record and is otherwise consistent with the APA standard of review." *Se. Conference v. Vilsack*, 684 F. Supp. 2d 135, 142 (D.D.C. 2010). Upon conducting its review, the court must set aside any agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance

with law." 5 U.S.C. § 706(2). The court's review is "highly deferential" and begins with a presumption that the agency's actions are valid. *Envtl. Def. Fund, Inc. v. Costle*, 657 F.2d 275, 283 (D.C. Cir. 1981). The plaintiff bears the burden of establishing the invalidity of the agency's action. *Id.* at 283 n.28.

Importantly, the court is "not empowered to substitute its judgment for that of the agency," *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971) *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 104 (1977), but instead must consider only "whether the agency acted within the scope of its legal authority, whether the agency has explained its decision, whether the facts on which the agency purports to have relied have some basis in the record, and whether the agency considered the relevant factors," *Fulbright v. McHugh*, 67 F.Supp.3d 81, 89 (D.D.C. 2014) (quoting *Fund for Animals v. Babbitt*, 903 F.Supp. 96, 105 (D.D.C. 1995) *aff'd sub nom Fulbright v. Murphy*, 650 Fed. Appx. 3 (D.C. Cir. 2016) (per curiam)).

### III.  DISCUSSION

The crux of Plaintiff's argument is that ODCP erroneously concluded that she received a refund for her service from October 1, 1963 to July 28, 1970 and that she is therefore entitled to additional compensation. (Pl.'s Opp'n at 2.) In pressing this claim, Plaintiff appears to concede that ODCP's determination that she received the refund was neither arbitrary nor capricious.[4] Nonetheless, in an abundance of caution given Plaintiff's *pro se* status, the court will review the matter as if the concession was not made.

---

[4] In her opposition brief, Plaintiff "argues that errors committed by ODCP may not be arbitrary and capricious, but are numerous and frequent." (*See* Pl.'s Opp'n at 18.)

Both parties acknowledge that the facts of this case are similar to those in *Miley v. Lew*, 42 F. Supp. 3d 165 (D.D.C. 2014), but whereas Defendant urges this court to find that this case is on all fours with *Miley*, Plaintiff contends that it is not. (*See* Def.'s Mot. for Summ. J. at 20–21; Pl.'s Opp'n at 15, 19; ECF No. 11 ("Def.'s Reply") at 6.) Because there are some similarities between the cases and because portions of Plaintiff's opposition could be construed as challenging *Miley's* underpinnings, the court begins its analysis with *Miley*.

In *Miley*, the plaintiff sought retirement contributions that she made as a DCPS teacher from November 1, 1967 to July 3, 1973. *Miley*, 42 F. Supp. 3d at 168–69, 171. The DCRB denied the plaintiff's request because it concluded that two forms—a Form 103 and Form DA-33—showed that there had been a refund of Plan contributions during the relevant period. *Id.* at 169. The plaintiff subsequently requested reconsideration and, when denied, appealed the DCRB's decision, in part, on grounds that she never received a refund. *Id.* Following each of ODCP's three separate reviews of the record, ODCP denied the plaintiff's request for reconsideration because it "concluded that the existing records used in the ordinary course of business in 1973—Form 103 and Form DA-33—were sufficient to indicate that Plaintiff had received her refund." *Id.* In accord with the practices used at the time to process refunds, each form stated, "Voucher Prepared & Paid on Audit # 021481" and referenced the corresponding date, August 16, 1973. *Id.* at 171. The forms, according to ODCP, were therefore entitled to a presumption of regularity. *Id.* at 171–72.

In seeking judicial review of ODCP's decision, the plaintiff in *Miley* mounted several challenges to ODCP's findings, each of which was unavailing. First, she contended that the fact that she never received a Form 1099-MISC from the Internal Revenue Service ("IRS")

8

demonstrated that she never received a refund. *Id.* at 172–73. The court rejected this contention because prior to 2000, employee contributions were made on a post-tax basis, so there was no need for the IRS to issue the form. *Id.* at 173. Second, the plaintiff argued that the forms were not credible for several reasons, including because the portion mentioning the voucher was handwritten and unsigned. *Id.* The court, relying on precedent which found that the same two forms, with handwritten and unsigned notations, could be the sole basis for finding that a refund was issued, rejected that argument. *Id.* Third, the plaintiff pointed out that ODCP was unable to produce her application for a refund. *Id.* at 174. The court noted however, that the Plan and the retirement system were administered by different entities and the refund application was not required to support ODCP's finding. *Id.* Lastly, the plaintiff argued that because other employees had raised similar concerns, the court should find that the chronic problems in processing DCPS retirement refunds undermined the presumption of regularity. *Id.* at 172. The court found that argument unpersuasive because the plaintiff failed to identify any other instance where DCPS produced business records which incorrectly indicated that a refund issued. *Id.*

Having reviewed the facts of this case, the court sees no basis for a different outcome. As in *Miley*, ODCP relied on facts in the record and provided an explanation for its decision that connected the facts and the final action in a rational, cohesive manner. Plaintiff's Form FA-103 bears the same handwritten, unsigned notation, found sufficient in *Miley*, stating that Plaintiff's refund was prepared and paid on a certain date. (A.R. 500.) *See also Alston v. Lew*, 950 F. Supp. 2d 140, 145 (D.D.C 2013) (finding government's reliance on an unsigned FA-103 sufficient where form was prepared in the ordinary course of business and displayed the voucher number and a date). Further, because Plaintiff's Form FA-103 shows that her contribution amount was zero in

9

1971, ODCP reasonably inferred that Plaintiff must have received a refund in 1970 because otherwise the amount would have reflected the contributions both parties agree Plaintiff made from October 1, 1963 to July 28, 1970. (A.R. 500.) Finally, in connection with Plaintiff's purchase of the creditable service, which included time from October 1, 1963 to July 28, 1970, Plaintiff received and sent correspondence characterizing the time as "redeposit time." (A.R. 500, 534–35.)

Throughout her opposition brief and accompanying submissions, Plaintiff makes clear that although she asked for three additional pieces of evidence—her refund application, a copy of the check, and an IRS Form 1099-MISC—to corroborate ODCP's finding, ODCP was unable to produce any of the documents. (*See* Pl.'s Opp'n at 2, 5, 7–8, 15, 18.) She contends that the absence of this evidence shows that she did not receive a refund. (*See id.*) However, in other cases in this district, each of those documents has been deemed unnecessary where the agency has forms which are entitled to the presumption of regularity and demonstrate that a refund was issued. *See Miley*, 42 F. Supp. 3d at 172–74 (finding absence of a refund application or Form 1099-MISC did not undermine ODCP's decision); *Alston*, 950 F. Supp. 2d at 145 (finding absence of check did not undermine ODCP's decision). While district court decisions are not binding on this court, the court finds them persuasive and agrees with the rationales presented.

Plaintiff next argues that unlike the *Miley* plaintiff, she has rebutted the presumption of regularity. (*See* Pl.'s Opp'n at 3–4, 13, 19–20.) "The presumption of regularity supports the official acts of public officers and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *Riggs Nat. Corp. & Subsidiaries v. Comm'r*, 295 F.3d 16, 21 (D.C. Cir. 2002) (quoting *United States v. Chem. Found.*, 272 U.S. 1, 14

10

(1926)). However, the court finds that none of the information Plaintiff proffers constitutes clear and convincing evidence that rebuts the presumption. First, Plaintiff points to the January 23, 2015 calculation errors identified in ODCP's letter to Plaintiff. (*See* Pl.'s Opp'n at 3–4.) However, as the court found in *Riggs National Corporation*, "an inconsistency that merely 'call[s] into question' the validity of an official document is not 'clear evidence' of that document's invalidity, or 'clear evidence' of anything, for that matter." 295 F.3d at 21–22 ("At best, the accompanying documents reflect clerical errors; at worst, they reflect the erroneous receipt of a disallowed pecuniary benefit."). Second, Plaintiff directs the court to several reports and news articles regarding the calculation of benefits (*see* Pl.'s Opp'n Ex. 16), and although one report pertains to ODCP, it concerns ODCP's fiscal year 2014 balance sheet, which does not rebut the presumption of regularity of ODCP business records created in 1970.[5]

Finally, the court is unpersuaded by Plaintiff's argument that she was unaware that she was paying for redeposit time. (*See* Pl.'s Opp'n at 4, 12, 15–16, 18.) As detailed above, it was Plaintiff who sent a letter to the D.C. Retirement Section seeking a calculation of how much money she needed "to pay back" into her retirement to bring it into compliance. (A.R. 655.) The

---

[5] Plaintiff also asks the court to examine a purported inaccuracy on the Form FA-103. (*See* Pl.'s Opp'n at 13.) She claims that the first service date listed is July 1, 1965, but it should be October 1, 1963. (*Id.*) Defendant's reply clarifies that the form states that it is "Card #2" and that the first entry refers to Plaintiff's step increase in salary. (Def.'s Reply at 5–6.) Having reviewed the form, the court is satisfied that the portion of the form at issue does not provide a basis to overcome the presumption of regularity.

Plaintiff also suggests that the multiple letters calculating different repurchase amounts rebuts the presumption of regularity. (*See* Pl.'s Opp'n at 16, 18.) However, as Defendant notes, the different figures are attributable to the addition of the applicable interest at the time of each calculation. (Def.'s Reply at 5.)

Retirement Section responded with a breakdown calculating that the creditable service of 6 years, 6 months, and 22 days represented "redeposit time" from "10/1/1963 to 7/28/1970." (A.R. 534.) Plaintiff attached this letter to her submissions on two separate occasions—first on September 6, 1991 when she requested a five-year payment plan (A.R. 533), and again on January 30, 2015 when she requested a reconsideration of her benefit determination (A.R. 665–75).

Accordingly, this court finds that ODCP provided a logical, rational basis for its decision, and Plaintiff has not met her burden of proving ODCP's final decision to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2). Therefore, the court cannot grant Plaintiff the relief she seeks.[6]

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is hereby **GRANTED**. The clerk of the court is respectfully requested to close this case.

A corresponding order will issue separately.

Date: September 23, 2019

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge

---

[6] Having found in favor for Defendant on this basis, the court need not address Defendant's argument that even if Plaintiff did not receive a refund, she would not be entitled to relief. (Def.'s Mot. for Summ. J. at 17–18.)